1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

JENNIFER J.,

Plaintiff,

CASE NO. C22-5356-MAT

10

v.

11

COMMISSIONER OF SOCIAL SECURITY,

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

12

Defendant.

13

14      Plaintiff appeals a final decision of the Commissioner of the Social Security Administration

15  (Commissioner) denying Plaintiff's applications for disability benefits after a hearing before an

16  administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record

17  (AR), and all memoranda of record,[1] this matter is REVERSED and REMANDED for further

18  administrative proceedings.

19                    **FACTS AND PROCEDURAL HISTORY**

20      Plaintiff was born on XXXX, 1971.[2] Plaintiff has at least a high school education and

21

---

22  [1] The Court notes that Plaintiff's Reply Brief (Dkt. 12) fails to comply with the page number and formatting
requirements contained in the Scheduling Order (Dkt. 9) and LCR 10(e)(1). Pleadings that fail to comply
23  with the Court's orders and the federal and local rules of civil procedure may be rejected.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

previously worked as furniture mover, substance abuse counselor, warehouse worker, and teacher's aide. AR 26. Plaintiff filed an application for Disability Insurance Benefits (DIB) and an application for Supplemental Security Income (SSI) on August 15, 2019, alleging disability beginning August 13, 2019. AR 15. The applications were denied at the initial level and on reconsideration. On April 23, 2021, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). AR 34–61. On June 2, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 15–28. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on April 4, 2022 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17.

At step two, the ALJ found that Plaintiff has a severe impairments of seizure disorder. AR 17. The ALJ also found that the record contained evidence of vertigo; however, the ALJ found that these conditions did not rise to the level of severe. AR 18.

At step three, the ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 18–21.

At step four, the ALJ found that Plaintiff has the residual functional capacity (RFC) to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [She can] occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; avoid concentrated exposure to noise; avoid all exposure to workplace hazards; and capable of simple, routine tasks.

AR 21. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 26.

At step five, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing the requirements of representative occupations such as sales attendant, small products assembler, and cashier II. AR 27.

Plaintiff raises the following issues on appeal: (1) Whether the ALJ failed to resolve an apparent conflict between the VE testimony and the Dictionary of Occupational Titles (DOT); (2) whether the ALJ properly considered the opinion of Plaintiff's primary care physician, (3) whether the ALJ properly considered Plaintiff's pain complaints; and (4) whether the ALJ properly considered the lay witness statements. Plaintiff requests remand for an award of benefits or, in the

1    alternative, remand for further administrative proceedings. The Commissioner argues the ALJ's

2    decision has the support of substantial evidence and should be affirmed.

3    **1. VE Testimony**

4    At step five, the Commissioner has the burden "to identify specific jobs existing in

5    substantial numbers in the national economy that claimant can perform despite her identified

6    limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). Based on the VE's testimony,

7    the ALJ concluded that Plaintiff would be capable of performing the requirements of a sales

8    attendant, small products assembler, and cashier II. AR 27.

9    Plaintiff argues that the ALJ failed to resolve an apparent conflict between the RFC and

10    the Level 3 Reasoning required for performing the jobs of sales attendant and cashier II. Dkt. 10,

11    at 2–3. Social Security regulations require the ALJ to inquire whether the VE's testimony is

12    consistent with the DOT and to obtain a reasonable explanation for any apparent conflict. Social

13    Security Ruling (SSR) 00-4p; *see also Massachi v. Astrue*, 486 F.3d 1149, 11452–53 (9th Cir.

14    2007). Here, the VE testified that a person limited to simple, routine work would be able to perform

15    the jobs of sales attendant and cashier II. AR 59. The DOT describes that both the sales attendant

16    and cashier II jobs require Level 3 Reasoning. DOT 299.677-010, 1991 WL 672643 (sales

17    attendant); DOT 211.462-010, 1991 WL 671840 (cashier II). The Ninth Circuit has held that "there

18    is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks,

19    and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015);

20    *accord Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). Because the ALJ did not identify

21    or attempt to resolve the conflict between Plaintiff's RFC and the Level 3 Reasoning required to

22    perform the jobs of sales attendant and cashier II, the ALJ erred by relying on the VE testimony to

23    find that Plaintiff could perform the requirements of these jobs at step five.

Plaintiff argues that the ALJ failed to resolve an apparent conflict between the RFC and the noise level of a small products assembler job. Dkt. 10, at 3–4. The VE testified that a person limited to avoiding concentrated exposure to noise could perform the requirements of a small product assembler. AR 59. The Selected Characteristics of Occupations Defined in the DOT (SCO) rates the noise level of occupations between Level 1 ("very quiet") and Level 5 ("very loud"). Program Operations Manual System (POMS) § DI 25001.001; *see also* SSR 00-4p (the ALJ's duty to resolve conflicts with DOT includes the SCO, its companion publication). The SCO rates the small products assembler occupation as a "Level 4 – Loud" noise level. *See* DOT 706.684-022, 1991 WL 679050 (small products assembler I). There is a plain conflict between a limitation to avoid concentrated exposure to noise and an occupation with a Level 4 noise level. The Commissioner argues that the RFC limitation to "avoid concentrated exposure to noise" limits the *frequency* of noise exposure rather than its *intensity* such that there is no conflict between the RFC and the DOT in this case. Dkt. 11, at 14–15. Contrary to the Commissioner's claim, neither the RFC nor the DOT make a meaningful distinction between noise "frequency" and noise "intensity." Because the ALJ did not identify or attempt to resolve the conflict between Plaintiff's RFC and the Level 4 noise level of a small products assembler job, the ALJ erred by relying on the VE testimony to find that Plaintiff could perform the requirements of a small products assembler at step five.

Plaintiff next argues that the ALJ failed to resolve an apparent conflict between the RFC and the hazards of a small products assembler job. Dkt. 10, at 3–4. The VE testified that a person limited to avoiding all exposure to workplace hazards could perform the requirements of a small product assembler. AR 59. The SCO defines "hazards" to include "moving mechanical parts of equipment, tools, or machinery; electric shock; working in high, exposed places; exposure to

radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9p. The SCO rates all of these conditions as "Not Present – Activity or condition does not exist" for the small products assembler job. *See* DOT 706.684-022. Accordingly, there is no apparent conflict between the RFC limitation to avoid hazards and the DOT's description that the SCO-defined hazards are "not present." Plaintiff argues that the DOT's general description of the small products assembler occupation contemplates activities such as "light metal-cutting" and the use of portable power tools, drill presses, and spot-welding machines, which "could obviously be considered a hazard." Dkt. 10, at 4. However, there is no indication that the ALJ's RFC in this case intended to define "hazards" any broader than the SCO's definition. Therefore, Plaintiff has not shown that the ALJ failed to identify or resolve an apparent conflict between the RFC's limitation to avoid exposure to all hazards and the VE's testimony that Plaintiff could perform the duties of a small products assembler.

The Commissioner argues that Plaintiff forfeited her challenge to the alleged inconsistencies between the DOT and the RFC because Plaintiff's counsel did not question the VE at the hearing regarding any inconsistencies. Dkt. 11, at 16 (relying on *Lair v. Colvin*, 2013 WL 1247708, at *4 (C.D. Cal. Mar. 25, 2013)). Contrary to the Commissioner's assertion, counsel's failure to question the VE regarding consistency with the DOT at the administrative level "does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning." *Lamear v. Berryhill*, 865 F.3d 1201, 1206 (9th Cir. 2017). Further, the district court in *Lair* found that the alleged inconsistency was "not at all apparent" such that "the ALJ was entitled to rely upon the VE's testimony." *Lair*, 2013 WL 1247708 at *4. Here, as discussed above, it is reasonably apparent that the RFC's limitation for simple, routine tasks is inconsistent with the Level 3 Reasoning required for the sales attendant and cashier II jobs and that the RFC's limitation to avoid

exposure to concentrated noise is inconsistent with the Level 4 loud noise level of the small products assembler. Therefore, the ALJ's duty to reconcile these apparent conflicts was not forfeited. Remand is required for the ALJ to reconcile the conflicts between the RFC and the DOT and explain the ALJ's departure from the DOT at step five. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[I]n order for an ALJ to rely on a job description in the Dictionary of Occupational Titles that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation.").

## 2. Medical Opinion Evidence

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id.* at §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

A. <u>Dr. Allison Odenthal, M.D.</u>

On April 5, 2021, Dr. Odenthal assessed limitations consistent with the requirements of sedentary work. AR 701; *see also* 20 C.F.R §§ 404.1567(a), 416.967(a). Dr. Odenthal further assessed that Plaintiff must periodically alternate and shift at will between sitting, standing, or walking due to back pain, that Plaintiff must lie down two times per day during a work shift to

relieve back pain and fatigue, can occasionally perform postural activities, can occasionally reach, and would be absent from work more than three times a month due to her impairments. AR 701–4. Finally, Dr. Odenthal opined that Plaintiff must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, noise, fumes, odors, dusts, gases, and poor ventilation and must avoid all exposure to hazards and driving due to epilepsy. AR 704.

The ALJ found Dr. Odenthal's opinion "mostly persuasive." AR 24. However, the ALJ found that the doctor's opinion limiting Plaintiff to lifting and carrying up to ten pounds, sitting and standing for two hours, reaching occasionally, and avoiding concentrated to exposure to cold, heat, wetness, humidity, and pulmonary irritants were not supported by the medical evidence of record. AR 24.

Plaintiff argues that the ALJ failed to provide sufficiently specific reasons supported by substantial evidence for rejecting Dr. Odenthal's sedentary exertion and occasional reaching limitations. Dkt. 10, at 6. The Commissioner argues that the ALJ sufficiently addressed Plaintiff's back pain elsewhere in the ALJ's decision and reasonably found these records inconsistent with Dr. Odenthal's opinion. Dkt. 11, at 12; *see Magallanes*, 881 F.2d at 755 (the Court may draw inferences from the ALJ's decision relevant to the ALJ's evaluation of medical opinion evidence). The ALJ found that an MRI of Plaintiff's lumbar spine demonstrated degenerative disc disease but that there was "no obvious nerve root compression" and that, in physical exams, Plaintiff had normal gait, negative straight leg raise, and minimal tenderness in her back with palpation. AR 22–24. However, the ALJ failed to explain how and why this evidence is inconsistent with Dr. Odenthal's assessment of Plaintiff's ability to lift carry, sit, stand, and reach. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

medical opinion(s) . . . will be."). Therefore, the ALJ's finding that Dr. Odenthal's sedentary exertion limitations were inconsistent with the medical evidence of record was not supported by substantial evidence.

Plaintiff argues that the ALJ's decision contains no discussion of Plaintiff's shoulder impairments and little discussion of Plaintiff's back impairment. Dkt. 10, at 6. Plaintiff argues that the ALJ failed to acknowledge that Dr. Odenthal referenced a 2012 MRI showing a partial rotator cuff tear in Plaintiff's right shoulder and that the doctor also noted right shoulder tendonitis and hand tingling. *Id.* (citing AR 703–5). Here, the ALJ rejected Dr. Odenthal's lifting, carrying, sitting, standing, and reaching limitations but failed to identify or discuss the supporting explanations presented by Dr. Odenthal to support her opinion. *See* 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b) (the regulations require the ALJ to explain how the ALJ considered the supportability and consistency factors when evaluating the persuasiveness of a medical opinion); *see also* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanation presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."). The Commissioner argues that "the record fails to establish any shoulder impairment that the ALJ was required to consider" and that the 2012 MRI is not in the record and has a remote date. Dkt. 11, at 12–13. However, the Court is the limited to "review[ing] the ALJ's decision based on the reasoning and factual findings offered by the ALJ," and the ALJ did not identify the relevance or remoteness of the 2012 MRI when evaluating the persuasiveness of Dr. Odenthal's opinion. *See Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226 (9th Cir. 2009). Therefore, the ALJ erred by failing to articulate how the ALJ considered the supportability factor when evaluating the persuasiveness of Dr. Odenthal's opinion as required by the regulations.

Plaintiff argues that the ALJ failed to provide any reasons for rejecting Dr. Odenthal's limitations for an at-will sit/stand opinion, the need to lie down at unpredictable intervals, and multiple absences per month. Dkt. 10, at 7. The Commissioner argues that the ALJ's rejection of Dr. Odenthal's sitting and walking limitations "necessarily implies" that the ALJ found the doctor's at-will sit/stand option, need to lie down periodically, and absenteeism limitations unpersuasive. Dkt. 11, at 13. Limitations from properly discounted evidence does not need to be included in the RFC finding. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691–92 (9th Cir. 2009). Here, the ALJ found Dr. Odenthal's opinion "mostly persuasive" and "largely consistent with and supported by the [medical evidence of record]," yet expressly rejected the doctor's lifting, carrying, sitting, and standing limitations. AR 24. Notably, the ALJ did not specifically reject Dr. Odenthal's sit/stand, need to lie down, and absenteeism limitations. AR 24. Therefore, the Court is not persuaded that the ALJ's decision reasonably implies the rejection of Dr. Odenthal's sit/stand, need to lie down, and absenteeism limitations absent the express rejection of those limitations. Because the ALJ did not properly reject Dr. Odenthal's sit/stand, need to lie down, and absenteeism limitations, the ALJ erred by not accounting for these limitations in the RFC.

As discussed above, the ALJ erred by failing to support with substantial evidence her finding that Dr. Odenthal's lifting, carrying, sitting, standing, and reaching limitations were inconsistent with the medical evidence, failing to consider the supportability of Dr. Odenthal's opinion, and failing to account for account for all of the doctor's assessed limitations that were not properly rejected. Where the ALJ fails to even mention a physician's opinion that a claimant's impairment causes functional limitations, the Court "cannot 'confidently conclude' that the error was harmless." *Marsh v. Colvin*, 729 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout v. Comm'r of*

*Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)). Therefore, remand is necessary for the ALJ to adequately evaluate the persuasiveness of Dr. Odenthal's opinion pursuant to the regulatory factors and reevaluate the RFC as warranted by further consideration of the evidence.

### 3. Subjective Testimony

The ALJ must provide specific, clear, and convincing reasons, supported by substantial evidence, for rejecting a claimant's subjective symptom testimony.[3] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996). An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence, but not when it merely lacks support in the medical evidence. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting a claimant's subjective testimony."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("[L]ack of medical evidence cannot form the sole basis for discounting pain testimony.").

Plaintiff alleges that she is unable to work because her epilepsy, vertigo, and lower spine impairments make her miss work, make mistakes, and because stress and pressure increases seizure activity. AR 258, 289. Plaintiff alleges that she experiences fatigue, falls asleep, is unable to concentrate or focus, loses track of time, is unable to drive when vertigo, nausea, or vomiting occurs, has memory loss and forgets what she is doing, and is unable to type, write, read, or focus. AR 289. Plaintiff alleges that these symptoms cause her to be tardy, miss deadlines, and miss work. AR 289. At the hearing, Plaintiff testified that she cannot sit for longer than 10 to 15 minutes without experiencing back pain, that she falls asleep when sitting, and that she drops things. AR 53.

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

Plaintiff alleges that her impairments affect her ability to lift, bend, stand, reach, walk, sit, talk, see, remember, complete tasks, concentrate, understand, follow instructions, and use her hands. AR 294.

The ALJ found that there was "no persuasive corroborating evidence for duration, frequency, and intensity of symptoms and limitation alleged as disabling" and that there is "[n]o objective evidence of psychological abnormality reasonably expected to result in the degree of limitation alleged." AR 22.

Plaintiff argues that the ALJ erred by finding that there was no corroborating or objective evidence to support Plaintiff's alleged degree of limitation. Dkt. 10, at 8–9. When evaluating whether a claimant's subjective symptoms limit their capacity for work, an ALJ considers the extent to which such allegations are consistent with the objective evidence and other evidence in the record. 20 C.F.R. §§ 404.1529(c), 416.929(c). Regarding Plaintiff's back pain,[4] the ALJ found that, although an August 2019 MRI showed degenerative disc disease, "there was no obvious root compression" and that a physical exam noted normal gait, negative straight leg raise, and only minimal tenderness to palpation in her back. AR 22. As with the medical opinion evidence, the ALJ failed to explain how and why this evidence was inconsistent with Plaintiff's testimony that back pain causes functional limitations, including that she cannot sit for longer than 10 to 15 minutes before experiencing back pain, that she drops thing, and that her impairments further affect her ability to lift, bend, stand, reach, and walk. Therefore, the ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting Plaintiff's symptom

---

[4] Plaintiff does not challenge the ALJ's evaluation of Plaintiff's allegations of symptoms from her seizure disorder. *See* Dkt. 10, at 11 (conceding that "Plaintiff's seizure disorder eventually came under some control with treatment").

ORDER
PAGE - 12

testimony regarding disabling back pain.[5] Moreover, to the extent that the ALJ discounted Plaintiff's testimony solely by finding that the medical evidence did not support her alleged limitations, this was error. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

Plaintiff argues that the ALJ erred by finding that Plaintiff received routine conservative treatment for her back impairment. Dkt. 10, at 10. Conservative treatment is "sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007). The ALJ found that "[r]outine conservative treatment and recommendations suggest symptoms not as limiting as alleged." AR 22. However, although the ALJ explained his reasoning with less-than-ideal clarity, the ALJ did not clearly reject Plaintiff's allegations of disabling back pain based on conservative treatment. Rather, it is reasonably apparent that the ALJ rejected only Plaintiff's allegations regarding her disabling seizures, and not Plaintiff's allegations of disabling back pain, based on routine and conservative treatment. *See* AR 22 (describing medication controlling Plaintiff's seizures). Plaintiff does not challenge the ALJ's findings regarding Plaintiff's seizure disorder. *See* Dkt. 10, at 11 ("Plaintiff's seizure disorder eventually came under some control with treatment."). Because it is not reasonably apparent that the ALJ rejected Plaintiff's allegations regarding disabling back pain based on evidence of routine and conservative treatment, Plaintiff has not shown that the ALJ erred.

---

[5] Plaintiff further argues that the ALJ failed to acknowledge important objective evidence related to Plaintiff's back and shoulder impairments, including evidence of Plaintiff's disc bulge being in contact with the nerve route, an annular tear, and a tear in Plaintiff's rotator cuff. Dkt. 10, at 9. However, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

1      The Commissioner argues that the record contains affirmative evidence of malingering.

2   Dkt. 11, at 2–3. Although the ALJ did not make a finding of malingering, the Commissioner argues

3   that "'mere evidence' of malingering in the record should be sufficient to obviate the clear and

4   convincing standard of review." *Id.* at 3 n.1; *see Carmickle*, 533 F.3d at 1160 (the clear and

5   convincing standard does not apply "when there is affirmative evidence that the claimant is

6   malingering"). The Commissioner relies on an opinion from Dr. Lezlie Pickett, Ph.D., who opined

7   that Plaintiff's self-reports were "clearly suspect for contradictions, inconsistencies response bias

8   and malingering" and "not at all credible." Dkt. 11, at 4 (citing AR 501–3). At the hearing,

9   Plaintiff's counsel raised concerns about the reliability of Dr. Pickett's opinions, noting that the

10  doctor "clearly makes personal attacks on these claimants." AR 40–41. Although the ALJ noted

11  the inconsistencies identified by Dr. Pickett, the ALJ did not adopt the doctor's opinions regarding

12  malingering or Plaintiff's lack of credibility. AR 23, 25. Further, neither party argues that the ALJ

13  erred when evaluating Dr. Pickett's opinion. Because the ALJ declined to adopt Dr. Pickett's

14  opinion regarding malingering and did not independently make a finding of malingering based on

15  Dr. Pickett's opinion, the Court is not persuaded that it should second-guess the ALJ's

16  determination against making a finding of malingering. *See Brown-Hunter v. Colvin*, 806 F.3d

17  487, 494 (9th Cir. 2015) ("[T]he credibility determination is exclusively the ALJ's to make, and

18  ours only to review."); *see also Bray*, 554 F.3d at 1226 (the Court must "review the ALJ's decision

19  based on the reasoning and factual findings offered by the ALJ").

20     As discussed above, the ALJ failed to provide specific, clear, and convincing reasons to

21  discount Plaintiff's subjective symptom testimony regarding disabling back pain. On remand, the

22  ALJ should reevaluate Plaintiff's subjective symptom testimony and revaluate the RFC as

23  warranted by further consideration of the evidence.

ORDER
PAGE - 14

### 4.  Lay Witness Testimony

Plaintiff argues that the ALJ improperly discounted the lay witness testimony of Plaintiff's mother, daughter, and friend. Dkt. 10, at 11–12. "Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).[6]

The ALJ found that the lay witnesses "are not medically trained to make exacting observations as to the date, frequencies, types, and degrees of medical signs and symptoms, or the frequency or intensity of unusual moods or mannerisms." AR 25. The ALJ further found that the lay witness statements "are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR 25

Plaintiff argues that the ALJ erred by rejecting the lay witness statements because they are "not medically trained." Dkt. 10, at 11. An ALJ may not reject lay witness testimony based on its relevance or irrelevance to medical conclusions. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2008); *see also Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). Therefore, the ALJ erred by rejecting the lay witness statements based on the witnesses' lack of medical training.

Plaintiff next argues that the ALJ erred by rejecting the lay witness statements by finding that they were inconsistent with the medical evidence. Dkt. 10, at 12. "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis*, 236 F.3d at

---

[6] The Ninth Circuit has not yet addressed whether the 2017 regulations in relation to the standard of review for lay witness opinions.

511. The ALJ found that the medical opinion evidence "support[s] the finding that claimant retains the ability to perform a range of light work with simple, routine tasks." AR 25–26. However, the ALJ failed to identify reasons for discounting the lay testimony that were germane to each individual who testified. *See Smolen*, 80 F.3d at 1289 ("[W]holesale dismissal of the testimony of all the witnesses as a group . . . does not qualify as a reason germane to each individual who testified."). Therefore, the ALJ erred by rejecting the lay witness statements because his reasoning was not germane to each lay witness.

The Commissioner argues that the ALJ's error was harmless because the lay witnesses described limitations that were substantially the same as those alleged by Plaintiff. Dkt. 11, at 9. "Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the ALJ's error in evaluating the lay witness testimony is harmless. *Molina*, 674 F.3d at 1117. As discussed above, the ALJ failed to provide well-supported reasons for rejecting Plaintiff's subjective symptom testimony. Therefore, the ALJ's error in evaluating the lay witness testimony in this matter was not harmless.

### 5. Remand

Plaintiff requests remand for an award of benefits or, in the alternative, for further administrative proceedings. Dkt. 10, at 13–15. The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Here, as discussed above, further administrative proceedings are necessary in order for the ALJ to reconcile the conflicts between the RFC and the DOT and, if necessary, explain the ALJ's departure from the DOT at step five, to reevaluate the persuasiveness of Dr. Odenthal's opinion pursuant to the

regulatory factors, to reevaluate Plaintiff's symptom testimony and the lay witness testimony, and to reevaluate the RFC as warranted by further consideration of the evidence.

## **<u>CONCLUSION</u>**

For the reasons set forth above, this matter is REVERSED and REMANDED for further administrative proceedings.

DATED this 8th day of November, 2022.


MARY ALICE THEILER
United States Magistrate Judge

ORDER
PAGE - 17